UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD A. PASSARETTI, JR.,      :
                                 :CIVIL ACTION NO. 3:15-CV-520
          Plaintiff,             :
                                 :(JUDGE CONABOY)
          v.                     :
                                 :
CAROLYN W. COLVIN,               :
Acting Commissioner of           :
Social Security,                 :
                                 :
          Defendant.             :

_____

**MEMORANDUM**

Here we consider Plaintiff's appeal from the Commissioner's
denial of Disability Insurance Benefits ("DIB") under Title II of
the Social Security Act. (Doc. 1.) In the November 3, 2011,
Disability Report, Plaintiff alleged disability due to autoimmune
disorder, hepatitis C, sarcoidosis, gastroenteritis, sleep apnea,
neuropathy, diabetes, rheumatoid arthritis, hypertension, WPW
(Wolfe-Parkinson-White), asthma, lyme disease, and bronchitis. (R.
186.) Plaintiff originally identified his onset date as September
11, 2001, and later amended it to October 19, 2011. (Doc. 12 at
1.) The Administrative Law Judge ("ALJ") who evaluated the claim,
Jarrod Tranguch, concluded that Plaintiff's severe impairments of
sarcoidosis with dyspnea, diabetes, obstructive sleep apnea, right
shoulder derangement status post-surgical intervention, depressive
disorder, and anxiety disorder did not alone or in combination with
other impairments meet or equal the listings. (R. 16-22.) The ALJ

found that Plaintiff had the residual function capacity ("RFC") to perform light work with certain nonexertional limitations and that he was capable of performing jobs that existed in significant numbers in the national economy.  (R. 21-32.)  The ALJ therefore found Plaintiff was not disabled under the Act from September 11, 2001, through the date of the decision, May 7, 2013.  (R. 31.)

With this action, Plaintiff asserts that the case must be remanded because the ALJ's step 5 determination is not supported by substantial evidence.  (Doc. 12 at 15.)  He specifically identifies two errors in the ALJ's decision: "[t]he ALJ erred in failing to assign appropriate weight to the medical opinions of Plaintiff's treating physician and the Agency's own examining specialist both of whom assessed marked limitations in Mr. Passaretti's functioning far greater than those found in the ALJ's mental RFC" (Doc. 12 at 3); and "[t]he ALJ failed to properly consider Mr. Passaretti's exemplary work history as part of his credibility analysis" (*id.*).

After careful consideration of the administrative record and the parties' filings, we conclude Plaintiff's appeal is properly denied.

## I. Background

### A.  *Procedural Background*

On October 19, 2011, Plaintiff filed an application for DIB. (R. 13.)  As noted above, Plaintiff initially alleged disability beginning on September 11, 2001, due to a number of physical

2

conditions. (Doc. 12 at 1; R. 186.) The claim was initially denied on February 29, 2012. (R. 13.) Plaintiff filed a request for a review before an ALJ on April 9, 2012. (*Id.*) On May 3, 2013, Plaintiff appeared and testified at a hearing. (*Id.*) Prior to the hearing, Plaintiff amended his onset date to October 19, 2011. (R. 226.) Plaintiff appeared at the hearing with his attorney, Iyla O'Brien. (R. 39.) Vocational Expert ("VE") Gerald Keating also testified. (*Id.*) ALJ Jarrod Tranguch issued his decision on August 23, 2013, finding that Plaintiff was not disabled under the Social Security Act through the date of the decision. (R. 31.) On October 17, 2013, Plaintiff requested a review with the Appeal's Council. (R. 7-9.) The Appeals Council issued its decision on January 13, 2015, denying Plaintiff's request. (R. 1-6.)

On March 16, 2015, Plaintiff filed his action in this Court appealing the Acting Commissioner's decision. (Doc. 1.) Defendant filed her answer and the Social Security Administration transcript on June 5, 2015. (Docs. 10, 11.) Plaintiff filed his supporting brief on July 20, 2015. (Doc. 12.) Defendant filed her opposition brief on August 24, 2015. (Doc. 13.) With the filing of Plaintiff's reply brief (Doc. 14) on September 8, 2015, this matter became ripe for disposition.

**B.    *Factual Background***

Plaintiff was born on February 25, 1970. (R. 30.) He was

forty-one years old on the alleged disability onset date of October 19, 2011.  Plaintiff has a high school education.  (R. 49.)  In the October 24, 2011, Disability Report, he reported that he stopped working on October 19, 2011, because of his conditions.  (R. 186.) Plaintiff has past relevant work as a utility company mechanic aide.  (R. 28, 72.)  He said that he had worked for Con-Ed in that capacity for twenty-two years and was terminated due to physical restrictions as a result of 9/11.  (R. 638.)  After he was terminated, Plaintiff collected unemployment compensation benefits. (R. 875, 986.)

1.  **Impairment Evidence**

Although Plaintiff has multiple physical impairments, he does not object to the ALJ's review of the medical evidence related to these impairments.  Rather, his first objection relates only to the ALJ's consideration of his mental impairments.  Therefore, I review evidence related Plaintiff's mental impairments during the relevant time period.

On February 3, 2012, Plaintiff saw Sara J. Cornell, Psy.D., for a psychological evaluation, having been referred by the Bureau of Disability Determination.  (R. 637.)  Dr. Cornell observed that Plaintiff was alert and oriented, with appropriate affect and depressed mood.  (*Id.*)  His speech was spontaneous, clear, coherent, logical, and appropriate, and he had no evidence of a formal thought disorder.  (*Id.*)  Plaintiff had good attention and

concentration, he interacted appropriately with Dr. Cornell, and he appeared to have appropriate judgment and insight into his difficulties. (*Id.*) Plaintiff provided a detailed history and description of his mental status. (*Id.*) He related his depressive symptoms to the September 11, 2001, World Trade Center attacks which he witnessed (his employer, Con-Ed, deployed him to that area). (*Id.*) He said the symptoms included sadness, tearfulness, lethargy, pessimistic thinking, low self-esteem, hopelessness, social isolation, anxiety, fear, and panic attacks. (*Id.*) Plaintiff stated that he experienced symptoms of post-traumatic stress disorder, including hyper-vigilance, exaggerated startle response, as well as nightmares and flashbacks. (*Id.*) He also stated that he had feelings that something frightening will happen, he locked his house doors with multiple locks, and felt insecure and in danger. (R. 638.) Plaintiff stated that he planned to start counseling in the near future. (*Id.*) Dr. Cornell stated that Plaintiff denied any hallucinations, delusions, or bizarre behaviors. (*Id.*) She also reported that he had difficulty providing examples as to the likely outcome of his behaviors and he could not perform tests of counting and seriation. (*Id.*) Dr. Cornell diagnosed Plaintiff with chronic post-traumatic stress disorder, major depressive disorder, panic disorder with agoraphobia, and a GAF of 30. (R. 639.) In summary, Dr. Cornell stated that Plaintiff "experiences depressive symptoms, symptoms of

anxiety, and symptoms indicative of post traumatic stress disorder." (*Id.*)   She strongly recommended outpatient counseling and stated that Plaintiff's prognosis at the time was poor.  (*Id.*)

In a questionnaire completed on the same date, Dr. Cornell opined on the basis of Plaintiff's self-reporting and clinical assessment that Plaintiff had marked difficulties in the areas of carrying out detailed instructions, making judgments on simple work-related decisions, interacting appropriately with supervisors and co-workers, responding appropriately to work pressures in a usual work setting, and responding appropriately to changes in a routine work setting.  (R. 634.)  She also noted that Plaintiff's daily living skills were affected in that he could not complete tasks.  (R. 635.)

On February 10, 2012, Plaintiff was seen at the Mt. Sinai Doctors World Trade Center Phsychiatry Department by Agnieszka A. Wisniewska, M.D..  (R. 1031-37.)  Plaintiff reported that another doctor recommended that he seek mental health treatment because he was feeling a lot of anxiety related to fears which began after 9/11.  (R. 1031.)  He said he was seeking treatment because he had been feeling "very depressed" since losing his job in October 2011.  (*Id.*)  Though Plaintiff had been on Zoloft in 2004-2005 (prescribed by a rheumatologist), he was not taking any psychotropic medication at the time of the evaluation, had never been in therapy, and never received inpatient treatment.  (R. 1033.)  Dr. Wisniewska

determined that Plaintiff's mood and PTSD symptoms required further assessment. (*Id.*) Dr. Wisniewska also noted that records from 2004 indicated that Plaintiff had reported "feeling appropriately upset when reminded about 9/11, but does not feel that his reactions are severe or have a negative impact on his life." (*Id.*) On examination, Plaintiff showed a depressed mood, constricted affect range, and tense affect. (R. 1035.) The mental status examination was otherwise normal. (*Id.*)

On February 23, 2012, James Vizza, Psy.D., reviewed evidence and concluded that Plaintiff had anxiety and depressive disorders, had mild restrictions of activities of daily living, moderate restrictions in maintaining concentration, persistence or pace, and no restrictions in maintaining social functioning. (R. 110-11.) Dr. Vizza noted moderate limitations in the areas of his ability to make simple work-related decisions, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and his ability to respond appropriately to changes in the work setting. (R. 115.) Dr. Vizza noted that Plaintiff was not receiving any mental health services at the time and that Dr. Cornell's assessment was an overestimation of Plaintiff's limitations and was not consistent with the totality of evidence in the file. (R. 112, 116.)

Plaintiff again saw Dr. Wisniewska on April 22, 2012, at which time Plaintiff's mental status examination was normal but for

anxious mood, constricted affect range and anxious affect. (R. 1028-29.) Differential diagnoses included "Adjustment Disorder with Mixed Anxiety and Depressed Mood," and "Personality Disorder." (R. 1029.) Plaintiff's "current GAF" was assessed to be 55-60 with the same noted as the highest GAF in the past year. (*Id.*)

On May 1, 2012, E. Neil Schachter, M.D., completed an "Anxiety Related Disorder" form sent to him by Plaintiff's attorney. (R. 646-50.) Dr. Schacter noted that Plaintiff had generalized persistent anxiety, persistent fear, recurrent obsessions or compulsions, and intrusive recollections of a traumatic experience that cause marked distress, but Plaintiff did not have recurrent severe panic attacks. (R. 648.) He noted that Plaintiff had marked limitations in all categories: activities of daily living, maintaining social functioning, deficiencies of concentration, persistence or pace, and episodes of deterioration or decompensation in a work or work-like setting. (R. 649.)

On May 21, 2012, Plaintiff was seen at The ReDCo Group, Behavioral Health Services, for a psychological evaluation. (R. 872-79.) Plaintiff had been referred because of depression and anxiety, stating that he had been increasingly depressed and anxious since he lost his employment (in October 2011) and he still suffered from the effects of his 9/11 experience. (R. 872.) His mental status examination showed that he was slightly tense, his facial expression occasionally showed anxiety, fear or apprehension

suggesting depression or sadness, his general movements were slightly restless or fidgety, and he occasionally felt fear, anxiety or apprehension and depression, sadness, or hopelessness. (R. 876-77.) Plaintiff showed no signs of perception problems or thinking with the exception that he had slightly racing thoughts. (R. 877-78.) The diagnostic impression included "MDD PTSD" and a GAF of 50. (R. 879.) It was recommended that Plaintiff attend individual therapy as scheduled. (*Id.*)

In July 2012, Plaintiff reported to Dr. Wisniewska that he was "stressed out and depressed," with complaints of being moderately depressed on most days during the preceding month. (R. 1021.) His mental status was basically the same as shown with Dr. Wisniewska's previous examinations except that his thought content showed depressive cognitions and ruminations. (R. 1023.) Plaintiff was prescribed Lexapro. (R. 1024.)

Muhamad Aly Rifai, M.D., of the ReDCo Group completed another psychiatric evaluation on August 30, 2012. (R. 870-71.) Plaintiff had been on Lexipro for two months at the time of the evaluation and his wife thought Plaintiff was doing better. (R. 870.) Dr. Rifai's diagnosis was "Mood disorder NOS, PTSD" had he assessed a GAF of 55, noting a GAF of 56 for the past year. (R. 871.) Recommendations included continuing Lexapro, adding Buspar to help with anxiety and mood, and both group and individual therapy. (*Id.*)

Dr. Wisniewska noted that Plaintiff reported some improvement in October and November 2012.  (R. 1003, 1008.)

On Janaury 9, 2013, Melissa M. Dudas, D.O., of Mt. Sinai saw Plaintiff, having taken over his care from Dr. Wisniewska.  (R. 990.)  Plaintiff reported that the therapy he was receiving in Pennsylvania and taking medication had made things easier.  (R. 991.)  Plaintiff reported ongoing family and financial problems. (*Id.*)  Plaintiff's mental status examination was normal except for "frustrated" mood, anxious affect, and ruminations in thought content.  (R. 993.)  Dr. Dudas diagnosed major depressive disorder and recommended continuation of Lexapro as well as continuation of therapy with Rita Mangus and Dr. La Fai at ReDCo Group.  (R. 993-94.)

On February 13, 2013, Plaintiff again saw Dr. Dudas.  (r. 985.)  Plaintiff stated that he was doing well despite chaotic family issues and his therapy in Pennsylvania was helpful.  (R. 986.)  Mental status examination showed that his mood was "surprisingly good," and his affect anxious.  (R. 988.)  Plaintiff was directed to continue Lexapro and therapy with Ms. Mangus. (*Id.*)

On March 21, 2013, Plaintiff again reported to Dr. Dudas that he was doing well and he was feeling calm on Lexapro and been able to deal with stressors at home.  (R. 981.)  Dr. Dudas noted that symptoms related to Plaintiff's major depressive disorder were in

remission and, although he still had some anxiety and PTSD-type symptoms, overall he was managing well. (R. 983.)

## 2. **Hearing Testimony**

May 3, 2013, Hearing testimony related to the mental component of Plaintiff's claim indicates that Plaintiff testified he was seeing someone at the World Trade Center group about once a month and a therapist about once a week. (R. 62-63.) Plaintiff said he was taking Lexapro and it seemed to be helping, as had the therapy. (R. 63-64.) Plaintiff testified that since taking Lexapro and going to therapy, he was more calm, could think more clearly, and did not fly off the handle. (R. 65.) He also said he did not have difficulties with memory or concentration. (*Id.*)

## 3. **ALJ Decision**

By decision of August 23, 2013, ALJ Tranguch determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time period. (R. 31.) He made the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity (SGA) since October 19, 2011, the amended alleged disability onset date (20 CFR 404.1571 et seq.).
>
> 3. The claimant has the following severe impairments: sarcoidosis with dyspnea; diabetes; obstructive sleep apnea (OSA); right shoulder derangement status post-

11

surgical intervention; depressive disorder; and anxiety disorder (20 CFR 404.1520(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) further limited as follows: the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for up to 6 hours in an 8 hour workday and sit for at least 6 hours in an 8 hour workday; can occasionally engage in pushing and pulling with his right upper extremity including operating levers or hand controls; can occasionally reach forward, laterally, and overhead with his right upper extremity; can occasionally climb stairs and use ramps but should avoid climbing ladders ropes or scaffolds; should avoid concentrated exposure to extreme cold, extreme heat, wet or slippery conditions, high humidity, and potential pulmonary or respiratory irritants such as fumes, odors, dusts, gasses, pollen, and poor ventilation; should avoid hazardous working conditions involving moving machinery or unprotected heights; is capable of performing work that is generally described as unskilled involving simple routine tasks; and can perform work that is generally considered low stress involving only occasional simple decision making and only occasional changes in the work setting or work duties.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on February 25, 1970 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 11, 2001, through the date of this decision (20 CFR 404.1520(g)).

(R. 15-31.)

In making the determination that Plaintiff's severe mental impairments of depressive disorder and anxiety disorder did not meet or equal the listings (R. 15, 17-21), the ALJ gave limited weight to the opinions of Dr. Cornell and Dr. Schachter regarding their marked limitation findings.  (R. 19.)

13

Dr. Cornell's opinion was given little weight because it was a one-time examination which did not produce particularly adverse mental status findings and the findings did not support the severe degree of incapacity she noted. (R. 19-20.) The ALJ specifically noted that Dr. Cornell's assessed GAF of 30 was "indicative of an individual likely to be influenced by delusions or hallucinations or to have a serious impairment with regard to communications or judgment or have an inability to function in all areas." (R. 19.) ALJ Tranguch concluded that Dr. Cornell's opinions were largely based on Plaintiff's subjective reporting and the degree of incapacity she found was not consistent with other record evidence. (R. 20.)

ALJ Tranguch afforded little weight to Dr. Schachter's opinion because Dr. Schachter is not a mental health specialist and he provided no objective findings in support of his opinion. (R. 20.) The ALJ also concluded that Dr. Schachter overestimated Plaintiff's limitations when viewed in the context of the totality of record evidence. (*Id.*)

In discussing the basis for his RFC finding, the ALJ reviewed the records from the mental health providers at Mt. Sinai where Plaintiff began treating in February 2012 and was most recently seen in March 2013. (R. 26-27.) He noted that the records show he was treated for major depressive disorder and PTSD. (R. 26.) ALJ Tranguch found it significant that Plaintiff's mental status

14

examination findings remained relatively stable and benign throughout the time period he was treated at Mt. Sinai and there was noted improvement with consistent medication management. (*Id.*) The ALJ also noted recorded GAF scores of 55-60 in April of 2012. (*Id.*)

ALJ Tranguch also reviewed Plaintiff's treatment with ReDCo Group. (R. 27.) The ALJ discussed Plaintiff's diagnosis and mental status examination findings as well as GAF of 50 in May 2012 and 55 in August 2012. (Id.)

The ALJ explained the weight attributed to various opinions, including GAF scores. (R. 28-29.) Having concluded that Dr. Cornell's assessed GAF score of 30 in February 2012 was not consistent with or supported by her own exam, the ALJ found it significant that the remaining GAF scores from different providers were relatively consistent in assessing only moderate limitations which would not preclude all work. (R. 28-29.)

In considering Dr. Vizza's February 23, 2012, opinion, the ALJ noted that he gave great weight to the State Agency psychology consultant opinion that Plaintiff's affective and anxiety disorders caused mild to moderate limitations because it was consistent with the record as a whole, including that provided by the treating mental health providers. (R. 29.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to

15

determine whether a claimant is disabled.[1]  It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional

---

[1]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process. *Id.*

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found that Plaintiff was capable of performing work that existed in significant numbers in the national economy. (R. 30.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third

Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion. *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence. If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result

18

but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary,

19

in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *See, e.g., Albury v. Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review.")). An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001). It is the ALJ's responsibility to explicitly provide reasons for his decision and analysis later provided by the defendant cannot make up for analysis lacking in the ALJ's decision. *Fargnoli v. Massanari*, 247 F.3d 34, 42, 44 n.7 (3d Cir. 2001); *Dobrowolsky*, 606 F.2d at 406-07. Neither the reviewing court nor the defendant "may create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Hague v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007); *see also Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 50 (1983) (citations omitted) ("It is well-established that an agency's action must be upheld, if at all, on the basis articulated

by the agency itself.")

## IV. Discussion

### A. General Considerations

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits. *See Dobrowolsky*, 606 F.2d at 406. Social Security proceedings are not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove his claim. *Id.* "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." *Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974). As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence. *Dobrowolsky*, 606 F.2d at 406. Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed." *Id.*

### B. Plaintiff's Alleged Errors

As set out above, Plaintiff asserts the case must be remanded

for further consideration for two reasons: "[t]he ALJ erred in failing to assign appropriate weight to the medical opinions of Plaintiff's treating physician and the Agency's own examining specialist both of whom assessed marked limitations in Mr. Passaretti's functioning far greater than those found in the ALJ's mental RFC" (Doc. 12 at 3); and "[t]he ALJ failed to properly consider Mr. Passaretti's exemplary work history as part of his credibility analysis" (*id.*). We do not find that the ALJ erred on either basis.

## 1. **Medical Opinions**

Plaintiff asserts that the ALJ should have accorded more weight to the opinions of Dr. Schachter and Dr. Cornell because they were based on clinical observations and long term treatment relationships. (Doc. 12 at 3.) This claimed error is without merit for several reasons, including that neither of these professionals treated Plaintiff on a long-term basis for mental health problems. Dr. Schachter was not a mental health specialist and no evidence shows he was treating Plaintiff for mental health difficulties during the relevant time period. Dr. Cornell was a one-time examining consultant and the ALJ adequately explained why he found her conclusions inconsistent with her own examination.

Plaintiff cites multiple treatment notes from various mental health providers, asserting that Dr. Schachter's opinion and Dr. Cornell's opinion are consistent with the underlying evidence.

(Doc. 12 at 5-6.)  He does not demonstrate why this is so; he does not show how the overall benign findings, limited treatment, and Plaintiff's own reports about the effectiveness of treatment are contradicted by the cited evidence.

Though Plaintiff's claimed error is primarily couched in generalities, he specifically asserts that the ALJ did not give consideration to the factors found in 20 C.F.R. § 404.1527 when he failed to accord Dr. Schacter's opinion treating physician deference and Dr. Cornell's opinion deference as an examining specialist.  (Doc. 12 at 8.)

20 C.F.R. § 404.1527 explains how medical opinion evidence in the record is evaluated.  Section 404.1527(c) sets out the weight accorded medical opinions.  The examining and treating relationship are considered as well as the length of the relationship, examination frequency, and the nature of the treating relationship. 20 C.F.R. § 404.1527(c)(1), (c)(2).  The supportability of an opinion and provider's area of specialty are also considered.  20 C.F.R. § 404.1527(c)(3)-(c)(5).

Here the ALJ clearly considered appropriate factors.  (R. 19-21, 23, 26-29.)  As set out in the review of his Decision above, the ALJ considered the examining and treating relationships, areas of specialization, nature of the treatment provided, the supportability of the opinions, and the consistency of opinions with the record as a whole.  (*Id.*)

Plaintiff specifically contends that the ALJ erred in discrediting Dr. Cornell's opinion because he found that the opinion was premised on Plaintiff's subjective complaints. (Doc. 12 at 9.) This contention is without merit in that Dr. Cornell acknowledged that her assessments were based in part on Plaintiff's subjective reporting (R. 634-35), and her "clinical assessment" was based on one visit where Plaintiff alone provided the reason for his evaluation, the history of his illness and treatment, and his circumstances and general functioning. (R. 627-38.) Importantly, ALJ Tranguch concluded that Dr. Cornell's opinion that Plaintiff had moderate to marked limitations due to his mental impairments and assessed GAF of 30 were "not consistent with or supported by the objective findings reported by Dr. Cornell based on her exam" and not consistent with or supported by other evidence of record discussed in the Decision. (R. 28.)

Plaintiff's criticism of the ALJ's reliance on Dr. Vizza's opinion is also unavailing. Plaintiff avers that great weight should not have been afforded the non-examining source opinion in that the ALJ "made no effort to overcome the clear primacy of the treating source evidence in this case." (Doc. 12 at 11.) Because neither Dr. Cornell nor Dr. Schachter were mental health treating sources, their opinions were not entitled to the treating source deference set out in 20 C.F.R. § 404.1527(c)(2).

Plaintiff's further contention that the ALJ improperly relied

on Dr. Vizza's February 2012 opinion because it was outdated and failed to consider all relevant medical evidence may have some facial appeal but, in the context of the mental health evidence of record, reliance on the State Agency consultant was not error. Although it is obvious that Dr. Vizza's February 2012 opinion predates Dr. Schachter's opinion and Mt. Sinai treatment notes, Dr. Schacter's opinion was separately assessed and the Mt. Sinai notes were clearly considered.  (R. 20, 26-29.)  Significantly, the ALJ concluded that Dr. Vizza's opinion was consistent with the "record evidence as a whole including the evidence provided by the clamiant's treating mental health providers" (R. 29), i.e., the Mt. Sinai doctors who evaluated and treated Plaintiff.   Of further significance is the fact that Plaintiff began treating at Mt. Sinai for his mental health problems beginning the same month Dr. Vizza provided his consulting opinion and at no time did these providers find limitations/problems equivalent to the severity assessed by Dr. Cornell and Dr. Schachter.

Plaintiff's final contention is that the ALJ needed additional information to support his findings and, pursuant to SSR 12-2p and 20 C.F.R. § 404.1520b(c)(1) should have sought additional information.  (Doc. 12 at 16-17.)  These provisions apply only if there is insufficient evidence or, after weighing the evidence, the ALJ cannot reach a conclusion.  *See* 20 C.F.R. § 404.1520b(c)(1). They do not apply if the ALJ considers the record adequate to make

a decision.  In this case, the ALJ noted the significance of the consistency of mental status examinations and findings. (See, *e.g.*, R. 26, 29.)  ALJ Tranguch expressed no concern about insufficient evidence and we find no basis to do so.

Our review of the evidence and the ALJ's Decision shows that the ALJ did not substitute his lay opinion for that of medical professionals and Plaintiff's argument to the contrary is without merit.  Therefore, Plaintiff's claimed error that the ALJ improperly weighed the medical evidence is not cause for remand.

## 2.    **Work History**

Plaintiff's second claimed error is that the "ALJ failed to properly consider Mr. Passaretti's exemplary work history as part of his credibility analysis."  (Doc. 12 at 3.)  We conclude the ALJ did not err on this basis.

Although a plaintiff with a long work history may be entitled to consideration of that history in the assessment of his credibility, *Dobrowolsky*, 606 F.2d at 409, Plaintiff cites no authority that failure to do so is error.  As argued by Defendant, a Plaintiff with a long work history is not automatically entitled to have his complaints credited.  (Doc. 13 at 26 (citing *Birtig v. Colvin*, Civ. A. No. 14-565, 2014 WL 5410645, at *10 (W.D. Pa. Oct. 23, 2014) (" . . . an ALJ is not required to equate a long work history with enhanced credibility, particularly where . . . the ALJ found that the Plaintiff's claimed limitations during the relevant

time period were not supported by the medical evidence of record.")).) *Birtig* specifically noted that where an ALJ has found that the plaintiff's claimed limitations were not supported by the medical evidence of record, an ALJ is not required to equate a long work history with enhanced credibility. 2014 WL 5410645, at *10 (citing *Polardino v. Colvin*, 2013 WL 4498981, at *5 (W.D. Pa. 2013)).

Here the ALJ recognized that Plaintiff had a long work history. (R. 16.) He thoroughly set out the bases upon which he concluded that the record evidence failed to support Plaintiff's alleged degree of incapacity. (R. 24-30.) Importantly, Plaintiff does not argue that the ALJ erred in assessing the medical evidence related to his physical impairments. Therefore, we cannot conclude that the ALJ erred by failing to properly consider Plaintiff's work history.

## V. Conclusion

For the reasons discussed above, we conclude Plaintiff's appeal is properly denied. An appropriate Order is filed simultaneously with this Memorandum.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: September 24, 2015